# SUCCESSION of GLOVER.

The Probate Courts, under the late judicial system, were authorized, on an opposition to an account presented by an executor, to condemn him to pay to the succession, out of his own property, the amount of any debt due to the estate, which he had failed to collect through culpable negligence, (C. P. 993, 997, 1053, 1057); he being chargeable with all sums due to the succession which he has failed to collect, unless he show a sufficient excuse for his failure. Such a proceeding is not to be confounded with an action against an administrator on his bond, or for a *tort*, when the claim against him is a personal one.

Where an executor obtains a judgment against a debtor of his testator with a stay of execution, due diligence on his part requires that the judgment should be recorded immediately, and that an execution should be issued as soon as the delay has expired. It is for him to show any reason which might render such steps unnecessary.

Any creditor may oppose the homologation of an account presented by an executor, and may, without making the other creditors parties to the proceeding, obtain a judgment condemning him to pay, for the benefit of the succession, the amount of a debt due to it, which the executor fails to show that he has used due diligence to collect.

APPEAL from the Court of Probates of New Orleans, *Bermudez, J.* The executor of *Rebecca Glover* appealed from a judgment condemning him to amend an account filed by him, so as to credit the succession with $1168 10, the amount of a debt, on the ground that he had not shown due diligence to collect it. The judgment was rendered on an opposition to an account filed at the instance of the opposing creditor, *Dudley*.

*E. Randolph*, for the opponent. The exception taken in this case to the form of proceedings confounds claims for damages founded on torts, with claims for indemnity founded on matters of administration. The rule in the first class of cases is given in 3 La. 464, *Young* v. *Chaney*. The question there, was damages for injury to real estate. These, from their nature, are unliquidated demands, and the court say, "the act complained of would amount to a quasi-offence, and to say the least of it, a question might be raised as to the competency of a Court of Probates to decide on such a claim." The reason of this rule is to be found in considerations touching the trial by jury. *Morgan* v. *Lard*, 14 La. 286. "The jury are the peculiar judges of the quantum of damages." "The assessment of damages is the peculiar province of a jury."

*Barney* v. *De Russey*, 1 Rob. 75. C. P. 313. The two following cases were judgments by default, in which the court had assessed damages without the intervention of a jury : In actions of tort in which, from the nature of the demand, damages are to be assessed, a jury must be summoned to find the same." *Olivier* v. *Canon*, 11 La. 474. "A jury only can assess damages." *Liles* v. *New Orleans Canal and Banking Company*, 6 Rob. 273. Construed by these authorities, the interpretation of the rule in 3 La. seems to be, that that a Court of Probates ought not to have a jurisdiction which is the peculiar province of a jury, and that it cannot exercise a jurisdiction which, in every case of a judgment by default, would require it to perform an impossibility.

This case is different. The opponent's claim is based upon a mere matter of maladministration. In matters of this sort, curators are responsible in the Court of Probates. C. C. 1140. C. P. 924, no. 9, 997. These articles declare that curators are responsible for their maladministration : that they are to render their accounts to the Courts of Probate; that these courts alone have the power of compelling them to render accounts, and to pay over what they owe. To suppose, under these circumstances, that the Court of Probates could not give judgment against a curator personally, would involve the absurdity of supposing a tribunal possessing exclusive jurisdiction over the facts, without the power to decree what consequences flow from these facts.

Nor do any of the reasons given for the rule in 3 La. apply here. There can be no doubtful question of facts to be solved by a jury, for the curator is bound to furnish all the proofs and to make all the facts clear in his accounts ; and there can be no unliquidated damages to assess, as the amount of the debt lost by his negligence, furnishes the exact measure of his liability. See *Lafon's Heirs* v. *His Executor*, 3 Mart. N. S. p.718, 719. *Longbottom* v. *Babcock*, 9 La. 49. In these two cases, the executors were held liable, on oppositions to their accounts, for debts which they had failed to collect ; the one for gross negligence, and the other for want of proof of due diligence. See also, *Hodge's Heirs* v. *Dunford*, 1 Mart. N. S. p. 126. *McMicken* v. *Millaudon*, 2 La. 184. *Watts* v. *McMicken*, 2 La. 183. These cases were from courts of ordinary jurisdiction, and it was held that a single act of an administrator cannot be selected as the foundation of a suit ; that the action ought to be to compel him to render an account of every thing he has done in that character, that is, that the Court of Probates had jurisdiction and that an opposition was the proper form of proceeding.

The cases of *Ingraham's Heirs* v. *Stokes*, 10 La. 26, and *Parmelee* v. *Brashear*, 11 La. 332, sustain the jurisdiction of the District Courts in suits brought upon bonds of curators, &c., when the penalty of the bond is the gist of the action, and, by implication, refer it to the Probate Court when the gist is an account. In the case of *Flint* v. *Wells*, 4 La. 332, the jurisdiction of the District Court was negatived, when a suit on a curator's bond claimed an account, and not the penalty. The act of March 16, 1842, ch. 120, § 6, gives, in terms, exclusive jurisdiction to the Probate Court in all suits upon bonds of curators, &c., in relation to sureties. It must be construed to embrace principal, of course. Conclusive upon the point of jurisdiction, it says nothing about the mode of proceeding ; but the case of *Wilson* v. *Murrell*, 6 Rob. 69, in construing the clause of this act which requires that the necessary steps shall be taken against the principal before recourse upon the surety, expressly designates the mode by account and opposition under arts. 1055, 1056, 1057 of the Code of Practice. In *Boudousquie's Succession*, 9 Rob. 407, the issues made involved the question of an administrator's liability for negligence in collecting a debt; the prayer of the plaintiff in opposition, however, was for a different kind of relief; and the court ordered that the case be remanded to the Court of Probates to enquire whether the administrator ought not to be charged, with a certain sum of money, "in consequence of failure of recovery and loss to the estate, resulting from the administrator's negligence in pursuing legal means to secure payment." Code de Procédure, arts. 533, 1002. 995. 2 Toullier, p. 407–9.

On the question of jurisdiction, the court is referred to *Prieur et al.* v. *Their Creditors*, 2 Rob. 541. Dupin's Pothier, v. 8, p. 79. Story's Agency. § 183. 11 Mart. 192. 6 Ibid. N. S. 195. 8. Ibid. N. S. 328. 7 Ibid N. S. 38. 18 English Common.Law Reports 348. 20 Ibid., 183. Story's Agency. § 217, 218. 8 Mass. Rep. 57. 7 Dupin's Pothier, 161.

*M. M. Robinson*, for the appellant.—I. Courts of Probate are without jurisdiction of any action or proceeding to render an administrator *personally* responsible, for *laches*, or mal-administration. They are courts of *limited jurisdiction*.

SUCCESSION
OF
GLOVER,

They have no powers but such as have been *expressly given*. No article of either Code—no statute has ever given them jurisdiction in such a case. Art. 997 of the Code of Practice declares, that "the judges of the Courts of Probate, who have appointed or confirmed testamentary executors, and other persons administering successions, alone have the power of compelling them *to account and pay over what they may be found to owe*"—in the french text "*ont seuls le droit de les contraindre a rendre compte de leur administration et à en payer le reliquat.*" The Probate Court has *exclusive power* to compel an administrator *to account*; it has authority to force him to pay into court any money, or to give up any property, of the succession, in his possession—but when there is no longer any money or other property of the succession in kind, the Probate Court ceases to have jurisdiction. Any thing due to the succession by the executor *personally*, becomes a debt to the succession—and payment must be sought from him, as from any other individual, by an action before the ordinary tribunals. In the case of *Baillio* v. *Wilson*, 5 Mart. N. S. 217, the question of the jurisdiction of the Probate Court in such a case, was expressly raised and decided. Porter, J. says: "The first questions to be examined arise out of the pleas to the jurisdiction of the court, and we think the defence well offered to that part of the petition, which alleges the *personal responsibility* of the defendant by reason of her mal-administration. Such an action should be commenced in the District Court."

In the case of *Bouquette* v. *Donnet*, 2 La. 133, the question of the jurisdiction of the Probate Court of an action against an executor *personally*, for an illegal act in his administration was raised and argued. The court say: "It appears to us, this is a demand against the executor, *in his personal capacity*, for property sold by him contrary to law. In other words for a tort or wrong done by him." "We think the Probate Court had no jurisdiction of the case."

In *Ingram* v. *Stokes*, 10 La., 28, which was an action against a curator of absent heirs on his bond, brought before a District Court, the jurisdiction of the court was excepted to, but sustained.

In the case of *Hemken* v. *Ludewig*, 12 Rob. 188, the question was again expressly raised, whether a Probate Court could take jurisdiction of an *attempt* to render a curatrix liable *personally*, for the debts of the succession. Simon, J., in delivering the opinion of the court, says: "It is well settled that Courts of Probate have no jurisdiction of a claim against an administrator *personally*, for mal-administration."

The power of the Probate Court is limited to the property of the deceased—it has a sort of jurisdiction *in rem*. When the property itself has ceased to exist, and the succession has only a claim against an individual—whether the claim results from an ordinary contract, or from the mal-administration of an executor, payment can only be enforced before the ordinary tribunals.

It is evident that Probate Courts have not been invested with jurisdiction in actions against executors, &c., for mal-administration, because the remedy being *in damages*, the defendant is entitled to a *trial by jury*. The reason does not apply when the the object is to enforce the delivery of *property or money, of the succession, in his hands.*

*Not a case is to be found in the whole series of Reports in this State*, in which the court has sustained the jurisdiction of a Probate Court in such a case, *where the point has been raised.* An examination of the numerous cases cited by the counsel of the appellee will satisfy the court of this. In the cases of *Longbottom* v. *Babcock*, 9 La. 49—*Lafon's Heirs* v. *His Executors*, 3 Mart. N. S. 718—*Collins* v. *Andrews*, 6 Ib. N. S. 195—and *Succession of Boudousquie*, 9 Rob., 405, *no exception* was taken to the jurisdiction of the Probate Court, nor was the question of jurisdiction raised. The controversies turned on other matters.

The case of *Hodge's Heirs* v. *Durnford*, 1 Mart. N. S. 126, was an action before a District Court, and the question of jurisdiction was not raised. That of *Flint* v. *Wells*, 4 La. 537, merely decides that a District Court is without jurisdiction of an action to compel an administrator to account. In the case of *Prieur et al.* v. *Their Creditors*, 2 Rob. 541, the question related to the administration of a syndic of the creditors of an insolvent. The case had nothing to do with a a succession. The case of *Wilson* v. *Murrell*, 6 Rob. 65, was an action against the surety of a curatrix under the express provision of the act of 1842, and decides nothing as to the question of jurisdiction. The case of *McMicken* v.

*Millaudon*, 2 La. 184, is the only case in which there was any plea to the jurisdiction of the court, and that case was evidently determined on the ground, that the Probate Court alone had authority to compel an executor *to account*—which is not denied. The decision was delivered by Judge Porter, but a week or two before his decision in the case of *Boquette* v. *Bonnet*, reported in the same volume, p. 193, and must be taken in connection with the latter, in which it is expressly decided that a Probate Court has no jurisdiction of an action against an executor personally, for mal-administration.

If an executor can be condemned, on a mere rule in the Probate Court, to pay a large sum to the succession *de bonis propriis* on the ground of neglect or mal-administration, there must be some law authorizing the proceeding. An examination of the articles of the Code of Practice, (see arts. 993, 997, 1056, 1057,) will show that the Code never contemplated giving the Probate Courts authority to proceed against an executor personally, but where he retained *in kind* property or money of the succession. Art. 993 says: "It shall be the duty of the curator to account before the judge of probates, and pay over, &c., a due proportion of the *sums which he may have in his hands ;* and on his failure to render his account, &c., or to make payment, &c., execution may issue against his property." Art. 997 gives authority to probate judges " to compel executors, &c., to account and *pay over what they be found to owe*—(in the french text, *le reliquat*,) that is to say, any balance of property or money in their hands belonging to the succession. Art. 1057 authorizes an execution against the property of an executor, " when he fails to prove that he has no *funds in his hands belonging to the succession ;*" and this proof the preceding article (1056) declares may be made by " filing in court, a brief statement of his condition as executor, &c., with regard to the succession."

The provisions of sects. 3, 4, 5, of the act of 13th March, 1837, (B. & C's. Dig., 498--9) seem to have suggested the summary proceedings resorted to in the lower court ; but it will be seen that they do not extend to a case like this. The accounts of the executor show that the money received was disbursed according to the judgment of the court homologating the tableau, and as fast as received. Besides, there is no evidence that there was any bank in the parish of Orleans allowing interest on deposits. The third and fourth sections of the act of 1837, prescribe a penalty for not depositing money in bank, or withdrawing it—they relate to no other matter. The rule in this case was taken to effect a different object, nor is it pretended that the executor had any funds to deposit.

Admitting the jurisdiction of a Probate Court to condemn an executor *de bonis propriis*, for *laches* or mal-administration, where the question of liability arises *incidentally*, it does not follow that it would have the same power where such a judgment was sought as the principal end of the proceeding.

The case of the *Succession of Johnston*, 1 Ann. Rep. 75, does not touch the questions presented by this case.

II. All the creditors appearing on the homologated tableau of distribution should have been made parties to the proceeding against the executor, otherwise the judgment on the question of *laches*, if given in favor of the executor, would not be final, while it would be, if against him. If a contrary rule were admitted, there might be as many judgments as creditors. See *McMicken's case*, 2 La., 184.

III. There was no *laches*. The omission to take out execution is not conclusive evidence of negligence. It may be—as was the fact in this case, that there was no property to be seized.

IV. The omission to record a judgment is not alone evidence of such neglect as will subject an executor to the payment of the whole debt. Such a precaution can only be required where there is reason to believe it might be productive of some good. To render an executor liable for such an omission, it ought to be proved that some injury resulted from it. There was no pretence of any thing of the sort in this case, which is a mere attempt to render an executor personally liable for a *technical neglect*, in a case in which, in fact, the utmost diligence has been used.

V. Though the omission to take out execution be regarded as evidence of *laches, what law condemns the executor to the payment of the whole debt as a penalty for his neglect?* To entitle any party to damages for the malfeasance or misfeasance of another, he must show an injury to himself.

The judgment of the court was pronounced by

KING, J. On a rule taken by *T.B. Dudley*, as judgment creditor of *Glover's* succession, the executor of the deceased was ordered by the Probate Court to file a final account of his administration, and to state particularly all the steps taken for the collection of certain bills, which figured on the inventory and which were past due.

In obedience to this order, the executor filed an account, showing the application of the funds which had been received up to that date. It was accompanied by a statement that a judgment had been obtained against *James Dunlap*, the acceptor of the bills, a part of which had been collected; that an execution had been issued for the residue of the judgment, in virtue of which property had been seized, but had not been sold at the date of the last information from the sheriff, in whose hands it was. *Dudley* opposed the account on the ground that it was incomplete, inasmuch as the steps taken by the executor to coerce payment of the judgment were not stated, and diligence in the collection was not shown. He charged the executor with negligence in the pursuit of the debt, in giving unreasonable and unwarrantable delays, whereby the claim had probably been lost; and concluded with a prayer, that the executor be condemned to pay the amount of the opponent's claim, out of his individual effects.

The judge considered that the executor had been guilty of culpable negligence, and ordered him to amend the account, by placing to the credit of the succession the uncollected residue of the judgment against *Dunlap*, and to distribute it among the creditors, as directed in a provisional tableau previously approved. From this judgment the executor has appealed.

The appellant contends that this is an action to render an executor personally responsible for *laches* or mal-administration, of which the Probate Court has no jurisdiction; that all the creditors on the homologated tableau should have been made parties to the proceeding against the executor; and finally, that he has been guilty of no *laches*.

The Probate Court, as it lately existed, had the exclusive power to compel executors and other administrators to account and pay over what they might be found to owe; and, on their failure to account, or to make payment of the sum found due upon a rendition of accounts, executions issued from that court against the property of the administratos. C. P 997, 993, 1053, 1057.

The appellant treats the proceeding of the opposing creditor, as an action to render him personally liable for damages for his mal-administration, and contends that courts of ordinary jurisdiction can alone entertain the action. The proceeding, however, is not to be confounded with an action against an administrator on his bond, or for a tort, when the claim against him would be personal. If such were its character, the position assumed by the appellant would be correct. 10 La. Rep. 28. 12 La. Rep. 332. It is strictly an opposition to an account presented by an executor, in which the latter is required to charge himself with the whole of the effects which have come into his hands.

An administrator to whom funds or other effects of a succession are entrusted, cannot alter his relation to the estate he administers, when called on to account, and claim to stand as an ordinary debtor, for sums which he has either failed to collect, or which have been lost by his negligence. He will still be regarded as the depositary of all the effects and funds figuring on the inventory, for which he must render an account to the court by which he was appointed.

The right of the creditors to resist the homologation of a tableau until the entire effects of the succession have been accsunted for, and of the Probate Court to charge the administrator with all sums which he has failed to collect, unless he show a sufficient excuse for his failure, has been repeatedly recognized. This jurisdiction of the Probate Court, we consider to be well settled.

In the case of *Watts* v. *McMicken*, the action was instituted in the District Court, to render the defendant liable for mal-administration, in causing an execution to issue improvidently, in consequence of which a loss was sustained. The question of jurisdiction was expressly raised, and it was determined that the District Court was without jurisdiction of the demand. In that case the court say that, "the proper time to get redress will be when he, the curator, presents his account. Particular acts of the representatives of estates, cannot be singled out by individual creditors, and be made the basis of a suit. There can be only one to render an account, and when that is presented, all the acts of the curator, whether of non-feasance or of mal-feasance, by which the creditors are injured, can be opposed to him. This doctrine has been long established in this court." 2 La. 184. 1 Mart. N. S. 126.

In the case of *Flint* v. *Wells*, where the suit was to recover from an administrator the value of property lost by his negligence, and to compel him to account, the question of jurisdiction was again expressly made, and it was held that the Probate Court could alone entertain the action. 4 La. 537.

In numerous cases originating in the Probate Court, both before and since the decision of those already cited, this jurisdiction of that court has been tacitly recognized, without the point being expressly raised; and administrators have been charged, in their accounts, with sums lost in consequence of their negligence. 3 Mart. N. S. 718, 719. 9 La. 49. 10 La. 28. 9 Rob. 407.

As regards the question of diligence, it appears from the evidence that the effects of the succession of the deceased consisted, with an unimportant exception, of several bills of exchange; upon these a judgment was obtained against *James Dunlup*, the acceptor, and a stay of execution granted for about six months. This judgment was not recorded for many months after its rendition. At the expiration of the delay granted, no execution was taken out, nor did one issue until steps were taken by a creditor of the succession to render the executor liable for *laches*, about fourteen months after the judgment was obtained.

It was the duty of the executor, in the exercise of the diligence which a prudent administrator would use in his own affairs, to have caused the judgment to be recorded immediately upon its rendition, and to have issued an execution upon the expiration of the delay accorded to the debtor. If the known insolvency of the debtor, or other reasons existed which rendered these steps unnecessary, it was incumbent on the executor to show affirmatively the circumstances of excuse, and that the creditors had suffered no injury in consequence of his neglect. 11 Mart. 193. 6. Mart. N. S. 195. 9 Robinson, 407. 12 Robinson, 220.

The only excuse offered is, the belief of the executor that the debt could only be collected by indulgence. No sufficient grounds for this belief are shown. It has not been made to appear that the debtor's property was so covered by previous incumbrances as to render the registry of the judgment useless, nor that, at the expiration of the delay, he was not possessed of property out of which the judgment could have been made, in whole or in part. We are of opinion that the executor has failed to show the exercise of due diligence in securing and collecting the judgment.

SUCCESSION
OF
GLOVER.

It is urged that all the creditors appearing on the homologated tableau, should have been made parties to the proceeding against the executor. This, in our opinion, was not necessary. Any one creditor who is dissatisfied with an account rendered by an administrator, may oppose its homologation. His rights are not to be controlled or concluded by other creditors, who may be unwilling to unite in the proceeding, and hold the executor to a more strict accountability.

*Judgment affirmed.*